UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN PLANCICH, *et al.*,

        Plaintiffs,

v.

COUNTY OF SKAGIT, *et al.*,

        Defendants.

No. C14-0681RSL

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "Defendants' Motion for Summary Judgment." Dkt. # 15. Plaintiffs allege that the termination of Martin Plancich's employment as a Skagit County Deputy Sheriff was in retaliation for his having supported the Sheriff's opponent in the 2010 election and/or having filed a worker's compensation claim in 2008. Defendants seek dismissal of all of plaintiffs' claims.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

## BACKGROUND

On September 2, 2008, Deputy Plancich was a first responder to a multiple homicide scene at which a fellow deputy and friend was murdered. Five days later, Deputy Plancich had a heart attack for which he filed a Workers' Compensation claim. His supervisor, Sergeant Paul Arroyos, submitted a statement to Labor and Industries confirming that Deputy Plancich had been a first responder, that the shooting scenes were horrific, that he was at the hospital when the doctor said plaintiff's heart attack was stress-related, and that the Sheriff's Office did not question the validity of Deputy Plancich's claim. Defendant Will Reichardt, who at the time was the Chief Criminal Deputy in the Skagit County Sheriff's Office, asked Sgt. Arroyos to revise his statement: the Office did not want to set a precedent of paying workers' compensation for heart attacks. Sgt. Arroyos refused. Deputy Reichardt subsequently wrote a memorandum to Skagit County Human Resources in which he "clarified" two points made by Sgt. Arroyos. The memorandum was submitted to L&I, and Sgt. Arroyos asserts that Deputy Reichardt

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT               -2-

misrepresented his statements.

In the fall of 2009, Deputy Plancich endorsed Herb Oberg for the position of Skagit County Sheriff. Defendant Reichardt won the election, becoming Sheriff in January 2011. Two deputies provided declarations stating that there was a pattern in the Sheriff's Office of targeting employees who did not support the successful candidate for Sheriff: they both believe that Deputy Plancich, among others, was a victim of this practice. In contrast, deputies or employees who supported the incumbent were not disciplined.

In October 2010, Deputy Plancich initiated a traffic stop and participated in a theft investigation that ultimately resulted in the recovery of interior doors, valued at approximately $45,000, that had been taken from a residence located at 14022 Dodge Valley Road. The home had been foreclosed upon and sold to Deputy Plancich's sister- and brother-in-law. The prior owner still owed money for the doors and allowed the builder to remove them shortly before he vacated the property. Deputy Plancich and his family moved into the Dodge Valley residence on October 23, 2010. When the prior owner learned that one of the deputies that was involved in the "recovery" of the doors was living in the house, he raised the issue with the Skagit County Prosecutor's Office.

A criminal investigation conducted by the Whatcom County Sheriff's Office concluded that there was insufficient evidence to criminally charge Deputy Plancich or any of the other deputies involved in the Dodge Valley incident. The Skagit County Sheriff's Office determined, however, that Deputy Plancich misused his authority as a police officer for personal gain and had been dishonest at various points in the investigation in violation of Skagit County Sheriff's Office policies and code of conduct. Sheriff Reichardt accepted the findings and recommendation of discharge and notified Deputy Plancich that he would be terminated. At Deputy Plancich's request, a hearing was held at which Deputy Plancich and his guild representative had an opportunity "to explain anything [they thought] maybe wasn't considered in this investigation, or things that [they thought the Sheriff's Office needed] to know to make an

informed decision . . . ." Dkt. # 17-1 at 2. Neither the workers' compensation claim nor political retaliation were mentioned. Plaintiff's employment was terminated on May 6, 2011.

Plaintiff's guild appealed the dismissal to a labor arbitrator. The stated issues were, "Did the employer have just cause to terminate Deputy Plancich[?] If not, what is the appropriate remedy?" Dkt. # 16-1 at 5 (Arbitration Transcript at 4). In attempting to answer these questions, the attorney for the guild questioned both Deputy Plancich and Sheriff Reichardt to determine whether the termination was actually prompted by plaintiff's L&I claim and/or his support for Sheriff Reichardt's opponent. Dkt. # 16-3 at 22 (Arb. Tr. at 499-500, Cross-Examination of Reichardt); Dkt. # 16-4 at 25 (Arb. Tr. at 660-61, Direct Examination of Plancich). After hearing four days of testimony from sixteen witnesses, the arbitrator concluded that there was clear and convincing evidence that plaintiff engaged in the conduct alleged and that such conduct provided just cause for his termination. With regards to the issues raised in this litigation, the arbitrator specifically found:

> Your Arbitrator is not persuaded that the investigation was biased from the outset. The mere fact that Grievant Plancich supported the Sheriff's opponent during the election or that Grievant challenged the Sheriff's finding in a workers compensation claim are insufficient to support the Guild's claim of bias. Reichardt testified at the arbitration hearing that neither of these incidents predisposed him to a conclusion as to Grievant's alleged conduct or the penalty to be imposed. I hold the Employer conducted a full, impartial, and fair investigation in this matter.

Dkt. # 16-10 at 60-61 (Arb. Decision at 58-59).

## DISCUSSION

### A. State Law Claims Alleging Unlawful Discharge

Plaintiffs have asserted claims of wrongful termination, political retaliation, outrage, emotional distress, respondeat superior, and negligent supervision, all of which are based on the theory that Plancich was terminated because he filed an L&I claim and/or supported defendant

Reichardt's political opponent.[1] Defendants argue that these claims are barred by the doctrine of collateral estoppel, which "prevents relitigation of an issue after the party estopped has had a full and fair opportunity to present its case." Hanson v. City of Snohomish, 121 Wn.2d 552, 561 (1993). The doctrine applies if the second litigation raises the same issues between the same parties, even though a different claim or cause of action is asserted. Rains v. State, 100 Wn.2d 660, 665 (1983).

> [T]he party seeking application of the doctrine must establish that (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 209, 307 (2004). Plaintiffs concede that the arbitration was a final judgment on the merits and involved the same parties, but argue that the issues decided during the arbitration are not the same ones raised in this litigation and that application of the doctrine would be unfair in these circumstances.

Plaintiffs list the elements of each of their causes of action and rely on the fact that none of them mimics the criteria for determining whether just cause for a termination exists. Plaintiffs misapprehend the identity-of-the-issue prong of collateral estoppel: the question is not whether the claims raised in both proceedings have identical elements, but rather whether the claims raised in the subsequent proceeding turn on an issue that was already determined against plaintiffs in the first proceeding. That is the case here. Plaintiffs can succeed on their state law claims only if the termination was motivated by retaliatory animus rather than by just cause. The

---

[1] It is not clear whether plaintiffs have adequately alleged claims based on the filing of an L&I claim. The Amended Complaint contains factual allegations related to the claim, but it does not allege a causal connection between the claim and his termination. The Court assumes, for purposes of this motion, that plaintiffs are alleging that both the L&I claim and Plancich's support of Reichardt's opponent motivated the termination.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT      -5-

arbitrator made findings against plaintiff on that exact issue, and plaintiffs may not relitigate them here in the guise of the state law claims.[2]

Plaintiffs also argue that application of collateral estoppel in this case would work an injustice. While it is true that the administrative decision will preclude a later tort action involving a previously determined factual matter, "this is the essence of collateral estoppel" and is not "inherently unfair." Christensen, 152 Wn.2d at 312-13. The record shows that plaintiffs had a full and fair opportunity to litigate their claims of retaliatory motive, that the procedures used during the arbitration comport with the requirements of due process, and that the arbitrator specifically considered and resolved a factual issue that is necessary to plaintiffs' state law claims. In the absence of any procedural or substantive unfairness, plaintiffs suggest that collateral estoppel should not apply where the tort claim asserted seeks to vindicate a public interest, such as their claim of wrongful discharge in violation of public policy. The argument was rejected in Christensen, however. The Washington Supreme Court acknowledged the important public policies underpinning a wrongful discharge claim, but found that "the doctrine of collateral estoppel may be applied where important interests are at stake. . . . Simply because the tort action rests on public policy does not mean that public policy dictates that collateral estoppel should never be applied." Id. at 313. The mere assertion of a claim based on public policy does not insulate the claim from the doctrine of collateral estoppel.

**B. State Law Claim of False Light and Defamation**

Plaintiffs allege that defendants shared false and misleading information about Plancich with the press and made unprivileged disclosures that have harmed plaintiffs emotionally, professionally, and financially. Plaintiffs acknowledge that the statements made to the Skagit

---

[2] To the extent plaintiffs argue that collateral estoppel is inappropriate because the arbitrator did not have all of the evidence of retaliatory intent that plaintiffs have now marshaled, "[a] party is not entitled to relitigate an issue simply because it has found additional evidence that might lead a trier-of-fact to a different result." U.S. v. Weems, 49 F.3d 528, 533 (9th Cir. 1995).

Valley Herald, the Criminal Justice Training Center, and the prosecutor's office are privileged, but argue that there is evidence from which the trier of fact could conclude that one of the investigators acted with malice. All defamation plaintiffs bear the burden of establishing falsity, an unprivileged communication, fault, and damage. Robel v. Roundup Corp., 148 Wn.2d 35, 55 (2002). If the plaintiff is a public figure and the defamation concerns his public duties, he must also show that the defendant acted with malice. Herron v. KING Broadcasting Co., 112 Wn.2d 762, 768 (1989). The fact that plaintiffs may or may not be able to show malice does not excuse them from having to show that the communications were not privileged. Plaintiffs have failed to raise a genuine issue regarding this claim.

## C. Free Speech Under the First and Fourteenth Amendments

Plaintiffs allege that defendants, as state actors, violated Plancich's constitutional right to free speech when they terminated his employment for making public statements in favor of Sheriff Reichardt's opponent during the 2010 election cycle. "The First Amendment protects the rights of citizens to criticize a government official, to support a candidate opposing an elected official, or to run against an elected official. A citizen does not check these rights at the door when he accepts a government job. Ordinarily, an elected official cannot fire or retaliate against an employee for his political opinions, memberships, or activities." Bardzik v. County of Orange, 635 F.3d 1138, 1144 (9th Cir. 2011).[3] The parties agree that plaintiff's conduct in supporting Oberg for Sheriff was entitled to constitutional protection. In the context of this motion for summary judgment, plaintiffs must also provide evidence from which a reasonable fact finder could conclude that Plancich's support for Oberg was a substantial or motivating factor in the decision to terminate his employment. Erickson v. Pierce County, 960 F.2d 801, 804

---

[3] Defendants have not argued that Deputy Plancich held the sort of policymaking position that could justify a patronage dismissal.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT           -7-

(9th Cir. 1992).[4] Plaintiffs have raised a genuine issue of fact regarding defendants' motivation. The temporal connection between the events (the investigation began just before defendant Reichardt became Sheriff) and Plancich's previously unblemished record both support a causal inference. In addition, plaintiffs have provided evidence of political supporters who avoided discipline and opponents who were drummed out of the Sheriff's Office during the relevant time frame.

The burden then shifts to defendants to show "by a preponderance of the evidence that [they] would have reached the same decision as to [Plancich's termination] even in the absence of the protected conduct." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Defendants argue that, once wrongdoing is conceded, plaintiffs cannot challenge the Sheriff's selection amongst the available remedies, citing Polion v. City of Greensboro, 26 F. Supp.3d 1197, 1214 (S.D. Ala. 2014). The Polion court did not apply the three-part test established in Mt. Healthy and Erickson, however, and the Court finds it unpersuasive. As discussed above, plaintiffs have raised a factual issue regarding whether Plancich's political activity was a substantial and motivating factor in the decision to terminate his employment. In response, defendants argue only that termination was an appropriate sanction for using a badge for personal gain and misleading fellow officers. That may be true, but it does not necessarily mean that defendants would have chosen termination in the absence of plaintiff's protected activity. Assuming plaintiffs are not bound by the arbitrator's findings on this issue, defendants' motivation is a factual issue that must be determined by the jury.

For all of the foregoing reasons, defendants' motion for summary judgment (Dkt. # 15) is GRANTED in part and DENIED in part.

---

[4] Defendants have not argued that plaintiffs' federal claims fail because the doctrine of collateral estoppel precludes re-litigation of this issue.

DATED this 23rd day of November, 2015.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge